

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

May 2, 2008

**BY HAND**

The Honorable Loretta A. Preska
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Ste. 1320
New York, New York  10007

  Re: United States v. Robert Mines,
     No. 08 Cr. 216 (LAP)

Dear Judge Preska:

  The Government respectfully submits the following in response to defendant Robert Mines's motion to suppress his statements and physical evidence recovered by officers of the New York City Police Department ("NYPD") in connection with the defendant's arrest on or about January 11, 2008.  In light of the affidavit by Julia Craig in support of the defendant's motion, in which she disputes that she voluntarily gave the officers consent to search her apartment, the Government consents to an evidentiary hearing.  A hearing is presently scheduled for May 30, 2008 at 9:30 a.m.

## BACKGROUND

  The defendant was charged in a one-count Complaint with being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1), see United States v. Mines, 08 Mag. 0305, and was subsequently indicted in the above-referenced case for the same offense. (A copy of the Complaint is attached to the defendant's motion as Exhibit A.)

  The Government anticipates that the evidence at the hearing will show the following: On or about January 11, 2008, officers from the NYPD responded to a report of a dispute in the vicinity of 974 Sheridan Avenue, Apt. 5H, Bronx, New York (the "Apartment").  When the officers responded, they spoke with the victim, Julia Craig, who stated that the defendant had threatened her with a gun. (Compl. ¶ 2(a)-(b)).  The defendant returned to the Apartment building and officers arrested him.  The victim and the defendant were separately transported to the police precinct. (Compl. ¶ 2(c)).

Hon. Loretta A. Preska
May 2, 2008
Page 2

      At the police precinct, Julia Craig signed a consent form to search the Apartment. (Compl. ¶ 3(a)).  A police officer spoke with the defendant, who told the officer that he had a gun in a bedroom closet in the apartment.  (Compl. ¶ 3(b)).  Two officers returned to the Apartment and recovered a handgun and a magazine with nine live bullets from a bedroom closet.  (Compl. ¶ 3(c)).

      The defendant was then given <u>Miranda</u> warnings, waived the warnings and agreed to speak with law enforcement.  He said that he had purchased the gun and owned the gun that the officers had recovered in the Apartment.  (Compl. ¶ 4).

      The defendant now moves to suppress the gun recovered by the officers, the post-arrest statement the defendant made before he had received <u>Miranda</u> warnings, and the post-arrest statement he made after receiving <u>Miranda</u> warnings.

      In Julia Craig's declaration submitted with the defendant's motion, she denies that she had ever seen the defendant with a firearm or bullets, and she denies that he ever threatened her with a firearm.  (Declaration of Julia Craig dated March 26, 2008, ¶ 2 (hereinafter "Craig Decl.").)  She also claims that when she signed the consent to search form, she did not know what she was signing or that she could refuse to sign the form.  (Craig Decl. ¶ 3.)  Further, she claims in her declaration that when the police arrived at the Apartment, they thoroughly searched the Apartment and seized a box of bullets.  (Craig Decl. ¶ 3.)  The Government's account of the officers' search of the Apartment and recovery of bullets is not described in the Complaint and is not consistent with Julia Craig's declaration.

      The Government anticipates that at a hearing, the evidence will show that Ms. Craig told officers that there might be a gun in a closet, and the officers requested and received Ms. Craig's verbal consent to search the Apartment.  After briefly looking in the closet, officers did not find a weapon.  Before Ms. Craig went to the police precinct with the officers, she provided the officers a medicine container of bullets that she retrieved from inside the Apartment.

      The Government agrees that the defendant's first post-arrest statement before he received <u>Miranda</u> warnings is not admissible against the defendant in the Government's case in chief. The firearm recovered from the Apartment and the defendant's second post-arrest statement after his waiver of his <u>Miranda</u> rights are admissible, however.

      In response to the issues raised by the defendant in his submission, and in light of the anticipated testimony, the Government respectfully offers the following summary of applicable legal principles.  The Government will request post-hearing briefing regarding the factual and legal issues if necessary.

Hon. Loretta A. Preska
May 2, 2008
Page 3

## APPLICABLE LEGAL PRINCIPLES

### A.    Officers May Conduct a Warantless Search With Consent

When an individual consents to a search, the search is reasonable and does not violate the Fourth Amendment. "[A]n individual may consent to a search, thereby rendering it reasonable." United States v. Garcia, 56 F.3d 418, 422 (2d Cir. 1995). Consent is valid if given voluntarily, and is not the product of duress or coercion, express or implied. Voluntariness is a question of fact given the totality of the surrounding circumstances. See Schneckloth v. Bustamonte, 412 U.S. 218, 228 (1973); Garcia, 56 F.3d at 422.

The Second Circuit "has steadfastly avoided the adoption of any criterion that, in and of itself, would mandate a finding of involuntariness and thereby undermine a thorough analysis of all the relevant circumstances." United States v. Bye, 919 F.2d 6, 9 (2d Cir. 1990) (citing cases). When assessing the voluntariness of consent, courts should consider factors including the individual's age, intelligence and educational background, length and nature of questioning, and whether law enforcement officers engaged in coercion. See United States v. Jones, 154 F. Supp. 2d 617, 621 (S.D.N.Y. 2001) (citing Schneckloth, 412 U.S. at 226-27).

Julia Craig does not dispute that she resided in the Apartment or that she signed the consent to search form. Instead, she claims in her Affidavit that she did not know that she could refuse to sign the form and she did not know what she was signing. (Craig Decl. ¶ 3.) The Government expects that the evidence will show that Ms. Craig did know that she was giving consent to search her apartment and she voluntarily gave that consent.

Knowledge of the right to refuse consent is not required to find voluntariness. "So long as the police do not coerce consent, a search conducted on the basis of consent is not an unreasonable search." Garcia, 56 F.3d at 422. The Government has no affirmative duty to advise a person that she has the right to refuse consent to a search of her residence. See United States v. Crespo, 834 F.2d 267, 271-72 (2d Cir. 1987) (citing Schneckloth, 412 U.S. 218). See also United States v. Watson, 423 U.S. 411, 424-25 (1976) (finding that the absence of proof that the defendant knew that he could withhold his consent may be a factor in the totality of circumstances but is "not to be given controlling significance"); United States v. Ramirez, 903 F. Supp. 587, 590 (S.D.N.Y. 1995) ("The government need not show, to prove consent, that the subject knew he had a right to decline the request for a search.").

Even assuming, *arguendo*, that Ms. Craig did not, in fact, understand the written consent form, the Fourth Amendment requires only that it was objectively reasonable for an officer to believe that he or she had obtained consent to search. See Florida v. Jimeno, 500 U.S. 248, 249-51 (1991) ("The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness--what would the typical reasonable person have understood by the exchange between the officer and the suspect?").

Hon. Loretta A. Preska
May 2, 2008
Page 4

   The determination of whether the officers' belief was reasonable and whether consent was voluntary is a question of fact. In <u>United States v. Trzaska,</u> 859 F.2d 1118 (2d Cir. 1988), the district judge was presented with two versions of how the police obtained the consent of the defendant's estranged wife, Mrs. Trzaska, to search the defendant's apartment. According to the testimony of a police officer, "Mrs. Trzaska signed the consent form freely after repeatedly urging the officers to go to the apartment and seize the weapons because she feared for her children's safety." But according to Mrs. Trzaska, the three police officers made her feel very "intimidated" and "threatened." The Second Circuit noted that the district court judge had to assess the voluntariness of Mrs. Trzaska's consent upon his in-court assessment of the witnesses, and the Second Circuit did not overturn the judge's assessments of credibility or the denial of the motion to suppress the firearms seized during the search based on the defendant's claim that his wife's consent was not voluntary. <u>Id.</u> at 1121.

   **B.**  **Post-*Miranda* Warning Statements Are Admissible Even If Preceded by Un-*Mirandized* Statements**

   At the police precinct, without having received <u>Miranda</u> warnings, the defendant told a police officer that he had a gun in a bedroom closet in the Apartment. (Compl. ¶ 3(b).) After police officers recovered a gun from the Apartment, different police officers read the defendant his <u>Miranda</u> warnings and he waived them and agreed to speak with the officers. (Compl. ¶ 4.) The defendant's post-<u>Miranda</u> statement is admissible because both the initial, unwarned statement and the second statement were voluntary.

   <u>Miranda</u> warnings are provided to ensure that a person in custody has sufficient knowledge of his or her constitutional rights and that any waiver of such rights is knowing, intelligent, and voluntary. <u>See Miranda v. Arizona</u> 384 U.S. 436, 444-45 (1966). Statements obtained after <u>Miranda</u> warnings but preceded by the suspect's earlier, unwarned incriminating statements are admissible so long as the pre-warning statement and the post-warning statement were both voluntary. <u>See Oregon v. Elstad</u>, 470 U.S. 298 (1985); <u>United States v. Carter</u>, 489 F.3d 528, 534 (2d Cir. 2007). There is an exception to the <u>Elstad</u> rule, however, where police use a deliberate, two-step strategy to undermine <u>Miranda</u> warnings and obtain a post-warning confession; in that situation, the second statement is not admissible. <u>See Missouri v. Seibert</u>, 542 U.S. 600, 616 (2004). Where such a strategy is not employed, though, the rule of <u>Elstad</u> applies. <u>See Carter</u>, 489 F.3d 528.

   In <u>Oregon v. Elstad</u>, 470 U.S. 298 (1985), the Supreme Court held that an unwarned, voluntary admission does not bar the admissibility of a later, warned confession. <u>Id.</u> at 314. The Court considered it an "unwarranted extension of <u>Miranda</u> to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period." <u>Id.</u> at 309. Instead, "the admissibility of any subsequent statement should turn in these

circumstances solely on whether it [was] knowingly and voluntarily made." Id. The Court further noted that when the prior unwarned statement is not voluntary, but was actually coerced, "the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators all bear on whether that coercion has carried over into the second confession." Id. at 310.

In addition, the Court explicitly rejected the argument that the psychological impact of having "let the cat out of the bag" compromises the voluntariness of an informed waiver. Id. at 311-12. Such a view would "effectively immunize[] a suspect who responds to pre-Miranda warning questions from the consequences of his subsequent informed waiver," and this immunity would "come[] at a high cost to legitimate law enforcement activity, while adding little desirable protection to the individual's interest in not being compelled to testify against himself." Id. at 312. "When neither the initial nor the subsequent admission is coerced, little justification exists for permitting the highly probative evidence of a voluntary confession to be irretrievably lost to the factfinder." Id. at 312.

In Elstad, police officers went to the suspect's house to arrest him for burglary. Id. at 300. While an officer waited with the suspect in the living room of the suspect's home, the officer said that he "felt" the suspect was involved in a burglary, and the suspect admitted he was there. Id. at 301. Later, at the police station, the defendant waived his Miranda rights and gave a statement. Id. The Court held that because the defendant had knowingly and voluntarily waived his right to remain silent, and there was no indication that the earlier unwarned statement was involuntary, the warned statements were admissible. Id. at 318.

In Missouri v. Seibert, 542 U.S. 600 (2004) (plurality opinion), the Court revisited Elstad, but this time in the context of a two-step interrogation technique designed to undermine the Miranda warnings. In Seibert, prior to administering Miranda warnings, the officers conducted a 30 to 40 minute interrogation, which the Court described as "systematic, exhaustive, and managed with psychological skill." After that interrogation, there was "little, if anything, of incriminating potential left unsaid." Id. at 604-05, 616. Fifteen to twenty minutes after the defendant made unwarned statements, police read her the Miranda warnings, after which she repeated her statements. Id. During the second session, the police officers confronted the defendant with her pre-warning statements. Id. at 605, 616. The officer testified that he made a "conscious decision" to withhold Miranda warnings based upon a technique he had been taught, which was to question first, then give warnings, and repeat questioning until he obtained the answers previously provided. Id. at 605-06.

Five Justices of the Supreme Court held the statements inadmissible, but the Court did not issue a majority opinion. A plurality of four justices advocated a multi-factor test to determine "whether Miranda warnings delivered midstream could be effective enough to accomplish their object." Id. at 615. The factors included: "the completeness and detail of the

Hon. Loretta A. Preska
May 2, 2008
Page 6

questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first." Id.

The Second Circuit considered Elstad and Seibert in United States v. Carter, 489 F.3d 528, 535 (2d Cir. 2007), and held that the defendant's post-warning confession was admissible despite a pre-warning incriminating statement. The Court held that Seibert provides an exception to Elstad for cases in which a deliberate, two-step strategy is used to obtain a post-warning confession. Id. at 536. In finding that no such strategy was employed in the case before it, the Court considered factors including the length and completeness of the un-Mirandized statement; the overlap in the content of the un-Mirandized statement and the full Mirandized confession; the personnel interrogating the defendant; the locations of the interrogations; the length of time between the interrogations; whether the second interrogator knew about the first incriminating statement; and the degree to which the second questioning was essentially a cross-examination using information gained from the first. Id. The Court noted that the defendant had received complete, though belated, Miranda warnings, and that he waived his rights orally and in writing. Id. at 537. Further, the Court found that the pre-warning statement was voluntary, and the interrogation was not coercive. Id.

The Government expects that at a hearing, the evidence will show that the defendant's waiver of his Miranda rights was knowing and voluntary, and that the lack of Miranda warnings before the defendant was first questioned did not irredeemably taint his second statement.

        **C.**       **The Physical Fruit of a Voluntary, Un-*Mirandized* Statement is Admissible**

A failure to give Miranda warnings does not violate a defendant's constitutional rights. See United States v. Patane, 542 U.S. 630, 641 (2004) (plurality opinion) (stating that the "mere failure to give Miranda warnings does not, by itself, violate a suspect's constitutional rights or even the Miranda rule"); Chavez v. Martinez, 538 U.S. 760, 772-773 (2003) (explaining that Miranda warnings are not required by the Fifth Amendment; instead, the Fifth Amendment forbids the admission of coerced statements at trial, and Miranda is a safeguard to ensure that the right against compulsory self-incrimination is protected).

In Patane, 542 U.S. at 634, the defendant was arrested for harassing his ex-girlfriend and released, subject to a restraining order. While police were investigating a violation of the restraining order, it came to their attention that the defendant, a convicted felon, was illegally in possession of a gun. Id. Officers arrested the defendant for violating the restraining order. The officers "attempted to advise [Patane] of his Miranda rights but got no further than the right to remain silent. At that point, [Patane] interrupted, asserting that he knew his rights, and neither officer attempted to complete the warning." Id. at 635. When asked about the gun, Patane said

Hon. Loretta A. Preska
May 2, 2008
Page 7


that it was in his bedroom.  The officers recovered the weapon, and the Government offered it at trial on charges for possession of a firearm by a convicted felon.  Id.

The district and appellate court held the firearm was inadmissible, and the Supreme Court reversed.  A majority of five Justices held that the firearm was admissible.  A plurality opinion of three Justices reasoned that un-Mirandized testimonial statements are generally inadmissible in the Government's case-in-chief at trial because such statements would be akin to compelling a defendant to testify against himself or herself at trial and would violate the Self-Incrimination Clause.  Id. at 637-39.  By contrast, because the failure to give Miranda warnings does not violate a defendant's constitutional rights, physical evidence derived from a voluntary but un-Mirandized statement is admissible.  Id.  "The [Self-Incrimination] Clause cannot be violated by the introduction of nontestimonial evidence obtained as a result of voluntary statements."  Id. at 637.  Therefore, the exclusionary rule and "fruit of the poisonous tree" doctrine articulated in Wong Sun v. United States, 371 U.S. 471, 488 (1963) does not apply.  See Patane, 542 U.S. at 637.  See also United States v. Jackson, 506 F.3d 1358, 1361 (11th Cir. 2007) (interpreting Patane to mean that "Miranda does not require the exclusion of physical evidence that is discovered on the basis of a voluntary, although unwarned, statement.").

In this case, under the reasoning of Patane, the defendant's firearm is admissible.

### D. Evidence is Admissible If It Would Have Been Inevitably Discovered Despite Any Constitutional Violation

The Patane Court held that the exclusionary rule does not bar physical evidence derived from a voluntary but unwarned statement.  Even if, *arguendo,* the firearm recovered from the Apartment would be suppressed as the fruit of a Miranda violation, the firearm is still admissible because the officers inevitably would have discovered it after they obtained written consent to search the Apartment.

According to the inevitable discovery doctrine, illegally-obtained evidence will not be suppressed if the government can prove that the evidence would have been inevitably discovered even without the constitutional violation.  See United States v. Mendez, 315 F.3d 132, 137 (2d Cir. 2002).  "The inevitable discovery exception rests upon the principle that the remedial purposes of the exclusionary rule are not served by suppressing evidence discovered through a 'later, lawful seizure' that is 'genuinely independent of an earlier, tainted one.'"  Hudson v. Michigan, 547 U.S. 586, 616 (2006) (citing Murray v. United States, 487 U.S. 533, 542 (1988)).  "Inevitable discovery" refers to discovery that would have occurred, or did occur, by lawful means, despite the unlawful behavior and independently of that unlawful behavior.  Hudson, 547 U.S. at 616.

Hon. Loretta A. Preska
May 2, 2008
Page 8

The Government expects that at a hearing, the evidence will show that because the police had consent to search the Apartment and intended to return to the Apartment to conduct a search, they would have found the firearm even if the defendant had not told them its location within the Apartment.

## CONCLUSION

In sum, the Government expects that the evidence presented at the hearing will demonstrate that the officers obtained consent from Julia Craig to search the Apartment on at least two occasions: when the officers arrived at the Apartment, and after she signed a consent to search form at the police precinct. Therefore, the firearm and other physical evidence recovered from the Apartment is admissible. In addition, the Government expects the evidence to show that the defendant received Miranda warnings and voluntarily waived them, and therefore his second statement to the officers is admissible evidence.

Based on the foregoing authority, the Government respectfully submits that after hearing the live testimony of the Government witnesses, the defendant's motion should be denied.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney
Southern District of New York

By:  \_\_\_\_/s/ Rebecca A. Rohr_____
Rebecca A. Rohr
Assistant United States Attorney
(212) 637-2531

cc:   Jennifer Brown, Esq., counsel for the defendant